McCLENDON, J.,
dissenting.
11While the majority makes a creative argument and I find the result reached to be just under the specific facts of this case, I am constrained to dissent given the plain language of LSA-R.S. 46:236.1.2B(1).
The starting point in the interpretation of any statute is the language of the statute itself. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186. The words of-a law must be given their generally prevailing meaning. LSA-C.C. art. 11. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9; State v. Johnson, 03-2993 (La.10/19/04), 884 So.2d 568, 575.
The plain language of LSA-R.S. 46:363.1.2B(1) states that the Department “shall provide the above services [listed in LSA-R.S. 46:363.1.2A] to any individual including absent or noncustodial parents ... regardless of whether the individual has ever received public assistance and regardless of .whether there is |2a delinquency.” The majority posits that the only payors that can seek support enforcement services from the Department are absent and noncustodial parents as defined in LSA-R.S. 46:236.1.l(9)(a) and (b). The plain language of the statute, however, is not limited to only those payors who are “absent or noncustodial parents,” and the statute requires the Department to provide such services to “any individual.” Had the Legislature intended to limit application to absent or noncustodial payor parents when it amended the statute in 1999, the Legislature could have easily done so by limiting the statutory language.
This conclusion is supported by LSA-R.S. 46:236.2A(1), which deals with amendments of support orders and. anticipates situations where “support enforcement services are being furnished ... to the payor.” Louisiana Revised Statutes 46:263.2A(1) was amended by 1999 La. Acts 762 to specifically include the payor, and did not limit payors to absent or noncustodial parents.[1]
Further, a plain language interpretation is not absurd because there may be situations where the payor might reasonably seek to employ the Department’s services, including instances where there may be a heightened level of animosity and rancor between the parents or where the payor is unable to timely send payments each month because the payor works offshore or abroad. While Mr. Boudreaux’s timing and motive here may be questionable, the Legislature has not limited the legislation to particular payors under certain circumstances.
Given the plain language of the statute, I .must conclude that LSA-R.S. 46:263.2A(1) allowed Mr. Boudreaux to apply for support enforcement services through the Department.[2] Thereafter, be *231 cause a reduction was sought in a child | ssupport matter in which services were being provided by the Department, this case was properly assigned to a hearing officer to issue recommendations on the reduction issue, which were later confirmed by the district court under its juvenile jurisdiction. See LSA-R.S. 46:236.5 and Thirty-Second Judicial District Court Rules 14A.1-14A.7. Therefore, I dissent and conclude that Ms. Boudreaux’s exception raising the objection of no right of action was properly overruled.

. In the act itself, the legislature indicated that the' purpose of the referenced amendment was "to permit non-custodial parents paying support benefits to apply for an order to make support benefits payable to the Department of Social Services rather than the individual or custodial parent."

. I note that the certification by the case worker in the motion to amend the payee to the Department is not articulate insofar as it provides:
... support enforcement services are being provided under La. R.S. 46:236.1 et seq to Jennifer Boudreaux ...
*231 Support services, however, were actually being provided to Mr. Boudreaux, which is undisputed by the parties.